

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GARRY SCROGGS,

       Plaintiff,

v.

WTI TRANSPORT, INC.,

       Defendant.

CIVIL ACTION NO.
1:14-CV-869-ODE

ORDER

This personal injury action, removed to this Court based on the diversity of the parties, comes before the Court on Defendant WTI Transport, Inc.'s ("WTI") Motion for Summary Judgment [Doc. 14], which is GRANTED for the following reasons.[1]

I. **Background**

The following facts are undisputed unless otherwise noted. This case arises from an injury suffered by Plaintiff Garry Scroggs ("Scroggs") while transporting a load of freight for WTI. At the time of the injury, Scroggs was a long-haul trucker operating as an independent contractor. The only issue before the Court is whether the indemnity provision contained in the parties' contractual agreement precludes the claims asserted in this action.

---

[1]This case is also before the Court on WTI's Motion for a hearing on its Motion for Summary Judgment [Doc. 33], which is DENIED. Having reviewed the record and the parties' arguments and citations to authority, the Court concludes that a hearing is not necessary to resolve WTI's Motion for Summary Judgment.

A. <u>Factual History</u>

WTI is an authorized carrier engaged in the business of transporting freight [Def.'s Statement of Undisputed Material Facts ("DSMF"), Doc. 14-2 ¶ 2]. On August 16, 2012, WTI and Plaintiff Scroggs entered into an Independent Contractor Lease Agreement (the "Agreement"), pursuant to which Scroggs agreed to transport freight on behalf of WTI as an independent contractor [<u>Id.</u> ¶ 1]. The Agreement provides that Scroggs will lease to WTI a specified tractor, which "shall be used to transport freight on behalf of [WTI]," and that Scroggs will "employ on [his] own behalf drivers and all other labor necessary to operate the [tractor]" [<u>Id.</u> ¶ 6]. The Agreement further provides that Scroggs:

> shall furnish, maintain, and keep in full force and effect at all times . . . if Worker's Compensation insurance is not required by law, Occupational Accident insurance covering [Scroggs] and all of [his] employees and drivers.
> . . .
> [Scroggs] shall indemnify and hold harmless [WTI] from all claims and demands of every type and nature arising as a result of . . . [Scroggs'] performance of this agreement, including, but not limited to, 'third party' claims against [WTI] by or on behalf of [Scroggs].

[<u>Id.</u> ¶ 7]. Scroggs and WTI agreed that Alabama law should govern the construction and application of the Agreement [<u>Id.</u> ¶ 8].

Scroggs signed the Agreement and separately initialed each paragraph of it at the time of execution [<u>Id.</u> ¶ 9]. Paragraph 38 of the Agreement, which Scroggs initialed, provides that "by initializing each paragraph, [Scroggs] confirms that [he] has read and understood the provisions of this [Agreement]" [<u>Id.</u> ¶ 10]. Moreover, Scroggs had the opportunity to seek assistance from an

2

attorney or other advisor in reviewing the Agreement before signing it [Id. ¶ 11].

Scroggs previously had driven for other carriers as an independent contractor and therefore was knowledgeable about such arrangements before entering into the Agreement [Id. ¶ 12]. Prior to becoming an independent contractor with WTI, moreover, Scroggs worked as an employee driver for WTI [Id. ¶ 13]. WTI asserts that Scroggs was not required to sign the Agreement or to become an independent contractor in order to continue working for WTI [Id. ¶ 14]. Independent contractor status, however, allowed Scroggs to receive 70% of the revenues from the freight he transported for WTI, as opposed to only 26% to 28% as an employee [Id. ¶ 16]. Further, unlike employee drivers, Scroggs could freely accept or decline loads offered to him by WTI for transport [Id. ¶ 17].

In accordance with the terms of Paragraph 21 of the Agreement, Scroggs enrolled as a covered driver under the Occupational/Accident insurance policy (the "Policy") issued to WTI by Zurich American Insurance Company [Id. ¶ 18]. The Agreement required Scroggs to obtain such insurance because, as an independent contractor, Scroggs was not eligible for WTI's worker's compensation program [Id. ¶ 19].

On March 4, 2013, Scroggs was transporting a load of freight for WTI from Richburg, South Carolina, to Birmingham, Alabama, pursuant to the Agreement [Id. ¶ 20]. Scroggs asserts that, during a stopover at a truck stop in Commerce, Georgia, he injured his back while attempting to tighten a strap securing tarps used to cover loads on the trailer he was pulling [Id. ¶ 21]. Scroggs has received, and is receiving, benefits for the back injury made

3

the subject of this lawsuit as an Occupational Injury under the Policy [Id. ¶ 22].

B. Procedural History

Scroggs initially filed suit in the Superior Court of Fulton County, Georgia, seeking damages incurred as a result of the injury he allegedly suffered while transporting freight for WTI [Doc. 1-1]. On March 26, 2014, Defendant WTI removed the action pursuant to 28 U.S.C. §§ 1441 and 1446, asserting subject matter jurisdiction based on the diversity of the parties [Doc. 1].

Recognizing that the indemnity provision of the Agreement is potentially dispositive of Scroggs' claims, the parties jointly requested permission to submit the discrete issue of the applicability of the indemnity provision for preliminary determination by the Court [Doc. 7 at 7-8], which the Court granted [Doc. 9]. Accordingly, the parties conducted limited discovery solely on the indemnity issue.

On September 22, 2014, WTI file a motion for summary judgment, along with exhibits and a statement of undisputed material facts [Doc. 14]. Scroggs filed his response on November 17, 2014, to which he attached a response to WTI's statement of undisputed facts and a statement of additional undisputed facts which he contends are relevant [Docs. 18 through 24].[2] WTI filed its reply on December 12, 2014, [Doc. 31], and on

---

[2] The Court will not consider Scroggs' additional statements of undisputed fact [Doc. 24 at 15-19] for purposes of this motion. To the extent that Scroggs introduces facts pertinent to the issue of WTI's liability, they are not relevant to the discrete issue now before the Court. Further, to the extent that Scroggs formulates each numbered paragraph as a "whether [or not]" proposition, he fails to comport with Local Rule 56.1. Indeed,

4

the same day moved for a hearing on its motion for summary judgment [Doc. 33]. Because the issue before the Court can be resolved without the aid of a hearing, WTI's motion for a hearing [Doc. 33] is DENIED.

## II. Legal Standard

The Court will grant summary judgment to a movant when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks and citation omitted). To be material, a fact must be identified by the controlling substantive law as an essential element of the nonmoving party's case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing the record, the Court must make all reasonable inferences in favor of the nonmoving party. Id. at 255; Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

## III. Discussion

The only issue before the Court is whether Paragraph 21 of the Agreement--containing the "indemnify and hold harmless" provision--precludes the claims Scroggs seeks to assert in this action. While WTI maintains that the provision is valid and

---

the local rules state that the "court will not consider any fact . . . stated as an issue or legal conclusion . . . ." LR 56.1(B)(1) NDGa.

enforceable under normal contract principles, Scroggs contends that the indemnity provision violates federal motor carrier regulations and is therefore unenforceable.

A. Federal Regulation of Motor Carrier Leases

Plaintiff Scroggs argues that the indemnity provision contained in the Agreement violates 49 C.F.R. § 376.12(c)(1), a regulation of the Federal Motor Carrier Safety Administration ("FMCSA") that requires motor carriers to "assume complete responsibility" for leased equipment. In light of the FMCSA regulation, Scroggs contends that a clause indemnifying WTI (a carrier) from tort claims concerning leased equipment is against public policy. Scroggs' argument fails for the following reasons.

In the 1950's, Congress determined that certain leasing practices of the motor carrier industry threatened the general public's ability to recover for injuries inflicted by negligent drivers. White v. Excalibur Ins. Co., 599 F.2d 50, 52 (5th Cir. 1979) (citing Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys., Inc., 423 U.S. 28 (1975)) (discussing regulations enacted pursuant to former 49 U.S.C. § 304, which was superseded by 49 U.S.C. § 11107 and reenacted as 49 U.S.C. § 14102).[3] Indeed, "[m]otor carriers had attempted to immunize themselves from the negligence of the drivers who operated their vehicles by making them all nominally 'independent contractors.'" Id. (citation omitted). The operators of motor vehicles were often

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding all decisions of the former Fifth Circuit issued on or before September 30, 1981.

6

insolvent, however, and injured parties had no recourse against the motor carrier for the negligence of its drivers. Id.

Consequently, Congress authorized the Interstate Commerce Commission (now the Secretary of Transportation) to promulgate regulations concerning leasing arrangements between owner/operator lessors and authorized-carrier lessees. 49 U.S.C. §§ 13102(20), 14102 (2007); White, 599 F.2d at 52. Pursuant to this authority, the Secretary mandated that "[t]he lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease [and that] the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 376.12(c)(1) (West 2015). Courts have interpreted this language to create a "statutory employee" relationship between the driver of a leased vehicle and the motor carrier lessee. Judy v. Tri-State Motor Transit Co., 844 F.2d 1496, 1500 (11th Cir. 1988); White, 599 F.2d at 53. As a result, the carrier may be held vicariously liable for the negligence of the driver, Coleman v. B-H Transfer Co., 284 Ga. 624, 626 (Ga. 2008) (regulation "impose[s] vicarious liability on the motor carrier, regardless of agency relationships, for the negligent operation of vehicles leased and operated under its certificate" (internal quotation marks and citation omitted)).

Relying upon § 376.12(c)(1), Scroggs contends that Paragraph 21 of the Agreement is contrary to public policy to the extent the provision indemnifies WTI (an authorized motor carrier) for its own negligence in caring for the leased equipment. Scroggs reads the regulation too broadly, however. Indeed, the duties described

7

under § 376.12(c)(1) and the resulting "statutory employee" relationship are intended to "insure the carrier's responsibility for the public safety." White, 599 F.2d at 53 (emphasis added). Thus, an indemnification arrangement between the lessor and lessee of motor carrier equipment does not, "itself, offend the regulations so long as the lessee does not absolve itself from the duties to the public and to shippers imposed upon it by the [Secretary's] regulations." Transamerican Freight Lines, 423 U.S. at 40.

Scroggs incorrectly contends that he is a member of the public to whom WTI owes the duties prescribed by the regulation. Indeed, the rule in the Eleventh Circuit is clear that a driver employed by a lessor of leased equipment is not a member of the general public protected by § 376.12(c)(1).[4] See White, 599 F.2d at 56 (driver employee of lessor not a beneficiary under the regulation); Judy, 844 F.2d at 1500 n.8 (adopting the rule announced by the Fifth Circuit in White); see also Coleman, 284 Ga. at 626 (discussing same). It is equally clear to the Court that Scroggs--the lessor--is not a beneficiary under the regulation. Other courts have held that a lessor:

> is not a member of the general public for purposes of maintaining an action under 49 C.F.R. § [376.12(c)(1)] against [a motor carrier] defendant. [Scroggs], as . . . the lessor, had contractual relations with defendant [WTI], unlike members of the traveling public who were not involved in the parties' economic enterprise

---

[4]To the extent Scroggs relies on Proctor v. Colonial Refrigerated Transp., Inc., 494 F.2d 89 (4th Cir. 1974), which held that a driver employed by the lessor was a member of the public for purposes of the regulation, the Fifth Circuit in White expressly rejected the Fourth Circuit's conclusion.

8

Riddle v. Trans-Cold Express, Inc., 530 F. Supp. 186, 189 (S.D. Ill. 1982). See also Coleman, 284 Ga. at 626 (quoting same). "[T]he lessor and lessee of equipment . . . are free to agree, by contract, as to rights affecting their relationship. . . ." Riddle, 530 F. Supp. at 189-90 (citing Transamerican Freight Lines). See also Coleman, 284 Ga. at 626 (quoting same). Because the Court concludes that Scroggs is not a member of the public protected by § 376.12(c)(1), the indemnity clause in Paragraph 21 of the Agreement violates neither public policy nor WTI's duties under the regulation.

B. Whether Paragraph 21 is Enforceable under Alabama Law

The parties do not dispute that Alabama law governs the construction and application of the Agreement. Under Alabama law, moreover, a party may contract against the consequences of its own negligence so long as the "provision was clearly understood by the indemnitor, and there is not shown to be evidence of a disproportionate bargaining position in favor of the indemnitee." Indus. Tile, Inc. v. Stewart, 388 So. 2d 171, 176 (Ala. 1980).

On the record before the Court, the parties "intelligently" entered the Agreement "knowingly, evenhandedly, and for valid consideration." Indus. Tile, 388 So. 2d at 176. Scroggs was familiar with lease agreements in the motor carrier industry, was aware of the indemnity provision, and specifically initialed Paragraph 21 when he signed the Agreement. To the extent Scroggs contends that the indemnification provision should not be enforced because Alabama law provides a cause of action for an employee who is injured due to a defect in the condition of machinery used in the employer's business, the Court disagrees. See Ala. Code § 25-

6-1(a)(1) (2014). Insofar as the parties do not dispute that Scroggs was an independent contractor and not an employee of WTI, he would not be able to bring an action under that code section.[5] Further, the existence of the cause of action under Alabama law does not negate a party's promise not to bring such an action.

Finally, it is clear that the language of Paragraph 21 bars Scroggs' claims. The provision need not expressly reference the indemnitee's own negligence to create a right of indemnity against such claims. See, e.g., Nationwide Mut. Ins. Co. v. Hall, 643 So. 2d 551 (Ala. 1994); see also Gen. Television Arts, Inc. v. S. Ry. Co., 725 F.2d 1327, 1331 n.6 (11th Cir. 1984) (under Alabama law, the absence of language in indemnity agreement specifically referring to indemnitee's own negligence is not required for enforcement of agreement). Thus, in Nationwide Mutual Insurance, a contract in which the indemnitor agreed to "save . . . harmless from all damage suits and claims arising in connection with said property and from all liability for injuries to persons or property while in, on, or about the premises" unambiguously created a right to indemnity against the indemnitee's own negligence. 643 So. 2d at 564 (emphasis added).

Paragraph 21 unambiguously encompasses the claims asserted in the complaint. The provision states that Scroggs "shall indemnify and hold harmless [WTI] from all claims and demands of every type and nature arising as a result of . . . [Scroggs'] performance of

---

[5]To the extent Scroggs argues that his statutory employee status would authorize him to bring suit under the Alabama law, he is mistaken. The statutory employee label exists only "to the extent necessary to insure the carrier's responsibility for the public safety." White, 599 F.2d at 52-53.

this agreement." The Agreement ultimately provides that Scroggs will lease a tractor to WTI and will thereafter operate the tractor in order to transport freight on WTI's behalf. Scroggs alleges that he was injured as a result of WTI's negligence while transporting freight--that is, during the performance of the Agreement. The Court is unpersuaded by Scroggs' contentions that the terms of the provision are limited to claims involving Scrogg's disability coverage and that he did not understand the full scope of the provision. The language is straightforward, unambiguous, and clearly encompasses claims arising from WTI's negligence.

In sum, the indemnity provision at issue here is enforceable under Alabama law and is not prohibited by federal motor carrier regulations. Plaintiff Scroggs' claims fall within the scope of the indemnity provision, and judgment is therefore due to be granted to Defendant WTI as a matter of law.

## IV. Conclusion

For the foregoing reasons, Defendant WTI's Motion for a Hearing [Doc. 33] is DENIED, and WTI's Motion for Summary Judgment [Doc. 14] is GRANTED. The Clerk is DIRECTED to enter judgment in favor of WTI and to close the case.

SO ORDERED, this **13** day of January, 2015.

_____
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE